**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**NATALIA J. NORWOOD** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 3:26-cv-213-JDM-RP**

**THE UNIVERSITY OF MISSISSIPPI;**
**KIMBERLY M. DEVRIES, individually and in her official capacity;**
**BRADLEY A. SALTERS, in his official capacity only;**
**NOEL E. WILKIN Ph.D., in his official capacity only;**
**GLENN BOYCE Ed.D, Chancellor of the University of Mississippi, in his official capacity only** **DEFENDANTS**

# DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiff Natalia Norwood has purported to state numerous claims related to her employment at the University of Mississippi (the "University"), including sex, race, and disability discrimination and retaliation. Plaintiff's Complaint should be dismissed because it fails to state a claim, because the University employee sued in her individual capacity is entitled to qualified immunity, and because it fails to provide a short and plain statement under Rule 8.

## FACTS[1]

Plaintiff was hired as a law fellow with the University's Office of Equal Opportunity and Regulatory Compliance ("EORC") in September 2022. Compl. at ¶ 51 [1]. Marissa Watson and Jordan Cohen, both white females, were hired at the same time, out of the same hiring pool, and under the same supervisory structure. *Id.* Plaintiff was later promoted to an ADA Specialist position within the EORC office. She also "separately" served as an adjunct professor in the Legal Studies Department. *Id.* at ¶ 2.

Plaintiff alleges Defendant Kimberly DeVries, the Assistant Vice Chancellor for Access

[1] The Defendant accept the well-pleaded allegations of the Complaint as true for purposes of this Motion only and reserves the right to contest any alleged fact.

and Compliance and Executive Director of the EORC, made decisions concerning her compensation, assignments, and advancement opportunities. *Id.* at ¶ 48. Plaintiff also alleges that Billy Benson, Jr., the Director of Equal Opportunity Compliance & ADA Coordinator, was another one of her supervisors. *Id.* at ¶ 59.

Plaintiff alleges she told DeVries in May 2024 that Benson engaged in unwelcomed sexual harassment and "requested reassignment." *Id.* Plaintiff claims DeVries told her that "she could not simply remove Benson's supervisory duties or move Plaintiff out of Benson's reporting line without addressing the matter through a formal process" and that DeVries further told her "that, if Plaintiff made a formal report to DeVries, DeVries could take action." *Id*. at ¶ 62. Plaintiff chose not to make a formal complaint against Benson because she did not want Benson to be confronted with her allegations and because she did not want the University to impose consequences on him. *Id*. at ¶¶ 62-63.

Plaintiff alleges she asked for a disability accommodation in the form of a transfer or reassignment to a different campus department on March 20, 2025, with "interim fulltime remote work while a transfer was arranged." *Id.* at ¶ 111. Plaintiff began working remotely on March 26, 2025, with the permission of DeVries' supervisor. *Id.* at ¶ 116. The University's Human Resources Department approved her request for paid remote work on April 7, 2025, and extended it through at least October 16, 2025. *Id.* at ¶¶ 119-120. Plaintiff was also given an "adjusted reporting structure" that removed DeVries and Benson from her chain of command and instead had her directly report to DeVries' supervisor. *Id.* at ¶ 123, 127, 129. Plaintiff was able to work remotely, full time, "without incident." *Id*. at ¶ 142.

Plaintiff complained about Benson's alleged conduct and DeVries' response to "senior University leadership" in March 2025. *Id.* at ¶¶ 69-70. The University retained a third party

investigator, Grand Rivers Solutions, Inc. ("GRS"), to review Plaintiff's concerns. *Id.* at ¶ 71. Plaintiff also alleges she filed a "written formal complaint under Title IX against Benson" on September 10, 2025. As part of that complaint, she requested to be placed on paid administrative leave and to have no contact, or even shared communications, with Benson and DeVries. *Id*. at ¶¶ 131-32. The University granted Plaintiff's request for paid administrative leave on October 22, 2025. *Id*. at ¶ 137.

On October 23, 2025, the University issued findings addressing Plaintiff's eighteen allegations against DeVries and the EORC office. *Id.* at ¶ 6; *See* Ex. "1."[2] Each allegation was determined to be unsubstantiated. *Id*. Plaintiff appealed the Summary of Findings to Defendant Noel Wilkin, the University's Provost, on November 7, 2025, who denied the appeal on January 24th, 2026. *Id*. at ¶¶ 155, 159.

Plaintiff filed an EEOC charge (No. 490-2026-00516) on April 23, 2026, alleging disability, race, and sex discrimination and retaliation. *Id*. at ¶ 25. She received a right to sue letter on April 29, 2026. *Id*. Plaintiff also filed a complaint with the U.S. Department of Education's Office of Civil Rights on November 8, 2025, alleging national origin discrimination, which OCR referred to the EEOC. *Id*. at ¶ 26. On May 21, 2026, Plaintiff received a right to sue letter for this charge (No. 490-2026-02296) containing her national origin claims. *Id*. at ¶ 33. Plaintiff has only brought suit under the first EEOC charge. *Id*. at ¶ 35.

---

[2] The Court's consideration of the Summary of Findings at the 12(b)(6) stage is appropriate because the content of the communication is referenced in Plaintiff's Complaint and central to her claims. *See Lone Star Fund V (US) v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (holding that the courts may consider "documents attached to the motion to dismiss that are central to claim and referenced by the complaint"); *see* Compl. at ¶¶ 39, 51, 54, 153, 183 [1].

Plaintiff filed this action on July 27, 2026, asserting Title VII, Title IX, and Section 504 of the Rehabilitation Act claims against the University. *Id.* at ¶ 16. Plaintiff also asserted an Equal Protection Clause claim against Defendant DeVries in her individual capacity. *Id.* at ¶ 228.

## STANDARD

Rule 12(b)(6) authorizes dismissal for failure to state a claim. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 570 (internal quotations omitted). In making this determination, courts accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Doe v. My Space, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The court does not, however, accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## ARGUMENT

### *1. Plaintiff has failed to state a Title VII retaliation claim.*

Plaintiff alleges the University retaliated against her because she filed internal complaints and participated in an OCR investigation. Compl., at ¶ 180 [1]. To state a prima facie case for retaliation under Title VII, Plaintiff must show (1) she engaged in conduct protected by Title VII; (2) she suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Ayodeji Awe v. Harris Health Sys.*, 163 F.4th 969, 972 (5th Cir. 2026). "For an employer's act to qualify as a materially adverse action, 'a plaintiff must

show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Title VII plaintiffs must also exhaust required administrative remedies by filing a charge of discrimination with the EEOC no more than 180 days after the alleged discriminatory action had occurred. 42 U.S.C. § 2000e-5(e)(1); *Davis v. Fort Bend County.*, 893 F.3d 300, 303 (5th Cir. 2018). The 180-day clock begins when an allegedly discriminatory decision is made and the plaintiff is notified. *See Ikossi-Anastasiou v. La. State Univ.*, 579 F.3d 546, 549-50 (5th Cir. 2009). Plaintiff's operative EEOC charge, No. 490-2026-00516, was filed on April 23, 2026, and states that the alleged discrimination occurred from October 22, 2025, through April 23, 2026. Compl. Ex. "A." [1-1]. Accordingly, any claims based on employment actions occurring before October 25, 2025, are time-barred.

Plaintiff has not alleged she has been separated from the University or that her pay or benefits have been altered. Rather, she was placed on paid administrative leave *at her request* after she filed a Title IX complaint. *Id*. at ¶¶ 131-32, 137. She alleges the University's implementation of that request was adverse because she was excluded from campus and campus systems during the investigation. *Id*. at ¶ 181. However, Plaintiff's request for leave included, at a minimum, requests for restrictions on contact and communications with Benson and DeVries. *Id*. at ¶¶ 131-32. Plaintiff cannot claim these accommodations are akin to "forced" administrative leave that "might carry a stigma in the workplace." *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (holding plaintiff in retaliation case did not experience adverse

employment action when she was placed on paid administrative leave pending investigation of her complaint).

Even if Plaintiff's placement on administrative leave administrative leave was an actionable employment event in and of itself, though, Plaintiff's own allegations reflect that decision was made on October 22, 2025, three days outside the 180-day charging period. *Id*. The only action Plaintiff identifies within the applicable 180-day window is Provost Wilkin's denial of two "appeals" on January 24, 2026. *Id*. at ¶¶ 155-56, 181-82. These "denials" do not constitute an adverse employment action. Plaintiff characterizes the first as an appeal of the "Summary of Findings" related to her complaints about the EORC office. *Id*. at ¶ 155. To the extent the Summary of Findings could be construed as an adverse employment action, it was issued on October 23, 2025, two days outside the 180-day charging period. *Id*. at ¶ 54. The fact that Plaintiff asked another University official to *review* those findings does not re-start the clock. *See Stanley v. Morgan*, 120 F.4th 467, 471 (5th Cir. 2024) (holding that the "pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods") (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980)).

The second appeal was apparently related to a public records request Plaintiff submitted to the University. She does not plausibly allege that the denial of such a request had any impact on the terms and conditions of her employment, and the University is aware of no authority holding that such a denial is tantamount to an adverse employment action. *See generally Lewis v. Jackson*, No. CV 14-0468-JWD-EWD, 2016 WL 1103904, at *4 (M.D. La. Mar. 1, 2016) (holding that "a failure to honor a public records request is a violation of state law only and does not implicate any federal constitutional or statutory rights").

Plaintiff has failed to plausibly plead that she suffered an adverse employment action within the statutory charging period, and her Title VII retaliation claim should be dismissed.

***2. Plaintiff has not alleged a race or color discrimination claim.***

Plaintiff's Title VII race and color discrimination claims should be dismissed because she has failed to plausibly allege she suffered "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Plaintiff identifies no such harm within the 180-day period leading to her EEOC charge on April 23, 2026. Plaintiff alleges she was not given the same opportunities as two White co-workers despite being equally qualified. Compl., at ¶¶ 188-91 [1]. However, she does not allege that any such act occurred within 180 days of the time she filed her EEOC charge. *Id*. at ¶¶ 51-58

Plaintiff alleges that the University's approval of her request for administrative leave on October 22, 2025, and the "Summary of Findings" on October 23, 2025, are "timely discrete acts" sufficient to "anchor this count" under the continuing violations doctrine. *Id*. at ¶ 194 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). She is wrong for at least two reasons. First, the Supreme Court in *Morgan* held that discrimination claims alleging "discrete" harms could not rely on that doctrine. *Id*. (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). Second, the "anchoring" acts she alleges on October 22 and 23, 2025, were outside the 180-day period, which only reached back to October 25, 2025. See *Harding v. Huntington Ingalls Indus.*, No. 1:15-cv-274-LG-RHW, 2015 U.S. Dist. LEXIS 150494, at *4 (S.D. Miss. Nov. 5, 2015) ("Mississippi is not a deferral state; a timely EEOC charge is one filed with 180

days of the alleged discriminatory acts.") (citing *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999)).

Plaintiff has failed to allege a timely adverse employment action, and her Title VII discrimination claim should be dismissed.

***3. Plaintiff's hostile work environment claim is time-barred and barred by her failure to exhaust administrative remedies.***

Plaintiff's Title VII hostile work environment claim should be dismissed because it is not reasonably within the scope of Plaintiff's EEOC Charge and is untimely. "The scope of a Title VII complaint is limited to the scope of the 'EEOC investigation that can reasonably be expected to grow out of the charge of discrimination.'" *Scott-Benson v. KBR, Inc.*, 826 F. App'x 364, 367 (5th Cir. 2020) (quoting *McClain P. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)).

Plaintiff's operative EEOC Charge (No. 490-2026-00516) includes allegations about her complaint against DeVries, her placement on paid administrative leave, her accommodation request, the outcome of the EORC investigation, and Provost Wilkins' appeals. *See* Compl., at Ex. "A." [1-1]. Nowhere in the EEOC charge did Plaintiff allege harassment, insults, ridicule, or similar conduct. Even broadly construing the charge, a hostile-work-environment claim cannot reasonably be expected to grow out of these allegations. Plaintiff did not properly exhaust her administrative remedies for this claim, and the Court should dismiss Count III. *See Taiwo Ayorinde v. Team Indus. Servs.*, 121 F.4th 500, 510 (5th Cir. 2024) (holding that plaintiff did not exhaust race-based hostile work environment claim when EEOC charge did not allege harassment, ridicule, or insult); *Scott-Benson*, 826 F. App'x at 367 (holding that plaintiff's hostile work environment claim should be dismissed because review of EEOC charge "reveals no reference to a hostile work environment").

Even if her charge could be read to include such an allegation, she has not alleged any facts within the 180-day charging period to support such a claim. Plaintiff alleges that she reported unwanted conduct in May 2024. Compl., at ¶ 59 [1]. She does not allege any unwanted behavior occurred after May 2024, and she was reassigned to a different supervisor in May 2025. *Id*. at ¶ 129. Plaintiff alleges the University's decision to grant her request for administrative leave on October 22, 2025, preserves this claim under the continuing violations doctrine. *Id*. at ¶ 200 (citing *Morgan*, 536 U.S. at 115-18). Even if the act of placing Plaintiff on administrative leave at her request during an investigation could be said to be part of a pattern of "repeated conduct" giving rise to a hostile work environment claim, *Id*. at 115, that action was still outside the relevant limitations period, which only reached back to October 25, 2025.

Plaintiff's hostile work environment claim should be dismissed because she failed to exhaust her administrative remedies and because it is time-barred.

### ***4. Plaintiff cannot bring an employment claim under Title IX.***

Plaintiff also pleads a Title IX retaliation claim in the alternative to Count I. *Id*. at ¶¶ 203-204. Because this claim is duplicative of her Title VII retaliation claim and relates solely to her own employment, it should be dismissed.

As Plaintiff recognizes, Title VII is the exclusive remedy for employment claims under which Title VII provides a remedy. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). While Title IX provides a right of action for employees who allege retaliation that is solely a consequence of complaints of noncompliance with that statute, *id*., courts must "strip away" any allegations that would support a private cause of action under Title VII and distinguish between retaliation suffered because of her participation in complaints and investigations regarding employment discrimination and retaliation suffered because of her

participation in complaints and investigations challenging alleged violations of Title IX. *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1118 (5th Cir. 2021).

All Plaintiff offers to distinguish this claim from her Title VII claim are her own conclusory allegations that she complained of noncompliance and that there were separate Title IX violations. Compl. at ¶ 205 [1]. For example, Plaintiff's allegation that Defendant DeVries's failure to protect her is an "institutional issue," *id*. at ¶ 131, is not a complaint of non-compliance or "systematically misallocated resources[.]" *See Lowrey*, 117 F.3d at 247. Because there is a lack of complaints regarding non-compliance with Title IX, there can be no retaliation based on such complaints.

The adverse actions Plaintiff alleges in support of this claim – her placement on administrative leave, the October 2023 Summary of Findings, and her appeal to the Provost – concern her employment with the University *and are in fact the subject of her employment claims*. *Id*. at ¶¶ 206-207. She cannot repackage her Title VII claims under Title IX for an extra bite at the apple. Plaintiff's Title IX claim is preempted by Title VII and should be dismissed.

***5. Plaintiff failed to plausibly allege a disability accommodation claim.***

Plaintiff also alleges the University failed to reasonably accommodate her disability. *Id*. at ¶¶ 209-220. To establish a failure to accommodate claim, she must plausibly allege (1) she is a qualified individual with a disability, (2) the disability and its consequential limitations were known by the covered entity, and (3) the entity failed to make reasonable accommodations. *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (citing *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).

Reasonable accommodations are modifications or adjustments to the environment or the manner under which the position held or desired is customarily performed that enables the

person with a disability who is qualified to perform the essential functions of that position. 29 C.F.R. § 1630.2(o)(1)(ii). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). An employee is not entitled to her preferred accommodation:

> The accommodation, however, does not have to be the "best" accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated .... [T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.

*Id*. (quoting 29 C.F.R. pt. 1630, App., § 1630.9). Reassignment to a different job may be a reasonable accommodation, "but '[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform.'" *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) (quoting *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)).

Plaintiff alleges that she was experiencing postpartum depression and psychiatric distress. She requested an interim full-time remote position and transfer or reassignment to a different position. Compl., at ¶¶ 211-12 [1]. The University reassigned her to full-time remote work and assigned her a new supervisor. *Id*. at ¶¶ 116-20, 129. She does not allege these accommodations were inappropriate. *See id*. at ¶ 142 ("Plaintiff does not allege that remote work or paid leave, standing alone, caused her harm."). Instead, she claims the University denied her a reasonable accommodation because she was not transferred to a new position. *Id.* at ¶¶ 213-216.

Plaintiff alleges she "discussed a Development Officer opportunity" with the dean of another school and "pursued a proposed administrative role" in another department. *Id*. at ¶ 112. However, she does not allege any facts that could lead to the conclusion that either position

existed, that she was qualified for either position, or that she could perform either job with or without reasonable accommodations.

Moreover, Plaintiff alleges she was told she could apply to open positions within the University and has not alleged that she did so. *Id.* at ¶ 123. She has failed to allege facts sufficient to prove the University's approval of her work-from-home request was not reasonable.

Plaintiff alleges that the University improperly "conditioned" her transfer request on the outcome of a separate investigation and that this unreasonably delayed the decision. Compl. at ¶ 215-216 [1]. However, her pleadings establish that she was given permission to work from home less than a week after asking for that accommodation, and any "delay" in considering her request for reassignment does not make the University's decision any less reasonable. *Id*. at ¶¶ 111, 116. *See Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 246 (5th Cir. 2025) (holding that, in implementing accommodations, "the employer is entitled to move at whatever pace he chooses so long as the ultimate problem—the employee's performance of her duties—is not truly imminent") (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999); *Schilling v. La. DOT & Dev.*, 662 F. App'x 243, 247 (5th Cir. 2016) (holding that "undue delay is only an ADA violation to the extent it renders an accommodation (if any) unreasonable; the statute provides no separate claim for undue delay".[3]

Finally, to the extent Plaintiff is seeking compensatory damages, even when a plaintiff successfully shows a failure to accommodate claim, they may only recover compensatory damages upon a showing of intentional discrimination. *Smith*, 956 F.3d at 318. Plaintiff does not provide any facts connecting the University's, or its employee's, actions to any intentional

[3] The Rehabilitation Act and Americans with Disabilities Act are judged under the same legal standards and the same remedies are available under both. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 245 n.2 (5th Cir. 2025) (quoting *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).

discriminatory treatment based on her postpartum depression or distress/anxiety. This Court should dismiss Plaintiff's failure to accommodate claim in its entirety.

***6. Plaintiff has failed to plausibly state a disability retaliation claim.***

Plaintiff's claim for disability retaliation under the Rehabilitation Act should also be dismissed. The standard for Plaintiff's Rehabilitation Act retaliation claim are the same as those for her Title VII retaliation claim: "To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that: (1) he engaged in a protected activity (e.g., the filing of an EEO complaint); (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the adverse employment action and the protected activity." *Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004).

Plaintiff's disability retaliation claim alleges the same "materially adverse actions" as does her Title VII Retaliation claim – the University placed her on administrative leave at her request, during which time she lost income as an adjunct instructor, and did not grant her "appeals" related to her public records request and complaints about the EORC office. Compl., at ¶ 223 [1]. These allegations fail for largely the same reasons as her other claims. The University's decision to place her on administrative leave, at her request, during the pendency of a different investigation based on a different complaint, is not an adverse employment action. *See Stewart*, 586 F.3d at 332. Nor is the Provost's decision to uphold a public records denial (which is not tied to her employment) or an investigative report (which did not change any of the terms or conditions of her employment). This claim should be dismissed.

***7. Defendant DeVries is entitled to qualified immunity.***

Plaintiff also sued Kimberly DeVries in her individual capacity, alleging she violated Plaintiff's Equal Protection rights when she failed to "protect" Plaintiff from another employee's sexual harassment. Compl., at ¶¶ 228-36. DeVries is entitled to qualified immunity.

Qualified immunity shields officials when they are acting within their discretionary authority and their conduct does not violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Designed to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the qualified immunity defense "protects public officials from suit unless their conduct violates a clearly established constitutional right." *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (*citing Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). The qualified immunity standard "gives ample room for mistaken judgments." *DePree*, 588 F.3d 282 at 287 (*citing Malley*, 475 U.S. at 343).

The Fifth Circuit asks a "standard two-part qualified immunity question: whether the conduct was unconstitutional and whether the unconstitutionality was 'clearly established' at the time the challenged conduct occurred." *Doe v. Jewell*, 151 F.4th 236, 244 (5th Cir. 2025) (5th Cir. 2025). "Plaintiffs carry the burden of demonstrating that qualified immunity is inappropriate." *Id*. at 245*; see also Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (holding that "the plaintiff has the burden to negate the assertion of qualified immunity once properly raised."). The plaintiff must point to controlling authority or a robust consensus of persuasive authority that placed his rights beyond debate. *See Wigginton v. Jones*, 964 F.3d 329, 337 (5th Cir. 2020) (*citing Morgan v. Swanson*, 659 F.3d 359, 371-72, 382 (5th Cir. 2011)).

Plaintiff has not demonstrated that DeVries violated a constitutional right, nor identified controlling authority that would have placed the Equal Protection right beyond debate at the time

of the challenged conduct. As such, DeVries is entitled to qualified immunity and this claim should be dismissed.

*a. No clearly established law supports a deliberate indifference claim.*

Plaintiff has failed to sufficiently allege that DeVries violated her Equal Protection rights. The sum and substance of Plaintiff's Equal Protection claim against DeVries is that she told DeVries in May 2024 that Benson had engaged in unwanted sexual conduct and that DeVries failed to "protect" her from this alleged conduct because of Plaintiff's sex and race. Compl., at ¶¶ 231-33 [1].

"A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor." *Jordan v. Wren*, No. 4:26-CV-00101-RP, 2026 U.S. Dist. LEXIS 204469, at *11 (N.D. Miss. Sep. 10, 2026) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) ("There is no vicarious or *respondeat superior* liability of supervisors under section 1983.") (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). Because government officials may only be liable for their "own misconduct," *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011), a supervisor may only be liable for a constitutional violation if she participated in the underlying deprivation or implemented unconstitutional policies that resulted in a constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009).

Public officials have no general constitutional duty to protect individuals, including public employees, from the acts of third parties. *See Rios*, 444 F.3d at 421 (noting public employee was not in "special relationship" triggering employer's constitutional duty to protect). Rather, plaintiffs must show supervisors acted with "deliberate indifference" to violations of

their constitutional rights committed by subordinates. *E.g.*, *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005). This is a "stringent standard of fault" that requires an allegation that a public actor "disregarded a known or obvious consequence of his action." *Southard v. Texas Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (quoting *Bryan County v. Brown*, 520 U.S. 397, 410 (1997)). In the context of an allegedly hostile work environment in a public workplace, this means Plaintiff "must allege that 'repeated complaints of civil rights violations' were followed by 'no meaningful attempt on the part of the [employer] to investigate or to forestall further incidents.'" *Johnson v. Halstead*, 916 F.3d 410, 418 (5th Cir. 2019) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)).

Here, Plaintiff has made no such allegation. She alleges she told DeVries that Benson had engaged in inappropriate conduct and that DeVries told Plaintiff that she would investigate the allegations, and potentially remove Benson from his supervisory duties, if Plaintiff filed a formal complaint. Plaintiff chose not to do so. *Id*. at ¶¶ 59-65. Plaintiff has cited no clearly established law holding that DeVries' response, if true, amounted to deliberate indifference, if Plaintiff's allegations about Benson's behavior were true. *Compare Southard*, 114 F.3d at 554 (holding that supervisor's awareness of allegations of sexual misconduct not sufficient to overcome qualified immunity), *with Johnson*, 916 F.3d at 418 (holding that supervisor not entitled to qualified immunity at pleadings stage where supervisor admitted and took responsibility for three-year racially hostile work environment).

*b. Plaintiff has failed to plausibly allege an Equal Protection claim.*

Plaintiff's Complaint goes one step further, alleging that DeVries *intentionally* failed to protect her because of Plaintiff's race and sex. An equal protection plaintiff must plausibly allege that he "received treatment different from that received by similarly situated individuals and that

the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (citing *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). "A discriminatory purpose 'implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'" *Id*. (citing *Taylor*, 257 F.3d at 473). Plaintiff must further plead "that each Government-official defendant, through *the official's own individual actions*, has violated the Constitution." *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (emphasis added). Plaintiff's pleadings fall short.

Plaintiff has failed to plausibly allege that that similarly situated individuals were treated differently. *Texas Ent., Ass'n v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021). To be similarly situated, the comparators must be "in all relevant respects alike." *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 978 (5th Cir. 2022). Plaintiff has not alleged that DeVries treated any similarly situated individual outside Plaintiff's race or sex differently than Plaintiff under similar circumstances. She has not alleged that any person of a different race or sex complained of alleged sexual harassment to DeVries and were treated differently.

Nor has Plaintiff plausibly alleged DeVries took some action at least in part due to discriminatory intent. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212-13 (5th Cir. 2009); *see Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 264-66 (1977) ("disparate impact alone cannot suffice to state an Equal Protection violation."). Her allegations that DeVries mentioned two white female co-workers and once assigned Plaintiff a "race-sensitive" investigation because she was a "woman of color" do not plausibly raise an inference that DeVries' treatment of Plaintiff's complaint was based on

Plaintiff's race or sex. Plaintiff has failed to state an Equal Protection claim against DeVries, and DeVries is entitled to qualified immunity.

***8. To the extent any claims remain, they should be dismissed for violation of Rule 8.***

For the avoidance of doubt, Defendants seek dismissal of all of Plaintiff's claims. However, because the length and structure of her Complaint frustrates any ordered attempt at responsive pleading, the Court should also dismiss any remaining claims for failure to comply with Rule 8.

FED. R. CIV. P. 8(a) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Under Rule 8(d)(1), "[e]ach allegation must be "simple, concise, and direct." The Fifth Circuit has noted the "underlying purpose" of Rule 8 is to "achieve brevity, simplicity, and clarity" in pleadings. *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979) (quoting *Knox v. First Security Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952)). *See also Hall v. Civil Air Patrol, Inc.*, 193 F. App'x 298, 299 (5th Cir. 2006) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.") (quoting *Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)); *Simmons v. Jackson*, No. 3:15-CV-01700-D, 2016 U.S. Dist. LEXIS 180852, at *5 (N.D. Tex. Nov. 10, 2016) ("A complaint that is 'prolix and/or confusing' should be dismissed because it 'makes it difficult for the defendant to file a responsive pleading and for the court to conduct orderly litigation.'") (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994)); 5 C. Wright & A. Miller, Fed. Prac. & Proc. § 1281 (4th ed.) ("Unnecessary prolixity in a pleading places an unjustified burden on the district judge and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage.").

Plaintiff's Complaint is sixty-two pages long, and it contains 243 enumerated paragraphs, most of which contain numerous allegations. While the Complaint violates Rule 8 by virtue of its length alone, the *nature* of the Plaintiff's allegations also clearly violates the Rule's purpose, as many of the allegations do not advance her claim. *See*, *e.g.*, Compl., at ¶¶ 33-36, 153, 160, 166, 168, 169. *See McZeal v. J.P. Morgan Chase Bank, NA*, No. 13-6754, 2014 U.S. Dist. LEXIS 92529, at *20-24 (E.D. La. July 7, 2014) (holding a fifty-seven-page complaint violated Rule 8 and noted it included "haphazard combinations of legal terms to make conclusory statements," "incomprehensible and disjointed claims," and "rambling."); *see also* 2 Moore's Federal Practice - Civil § 8.02 (noting that "the short and plain statements of the pleadings are developed in more factual detail by using the pre-trial processes of disclosure and discovery that are set forth in Rules 26 through 37"). Further, the Complaint is full of legal arguments and conclusory statements. *See*, *e.g.*, Compl., at §§ 38, 146, 149, 154, 191, 194, 198, 203, 205, 208, 233 [1]. Ultimately, it is difficult for Defendants to discern which facts to address in relation to which claims.

Plaintiff's Complaint is anything but "simple, concise, and direct." It is needlessly repetitious and includes unnecessary information. She drafted it without regard to the Court's admonition to comply with Rule 8 or Defendants' obligation to fairly meet the substance of the allegations. Therefore, the Court should dismiss the Complaint in its entirety.

## CONCLUSION

Plaintiff has failed to plausibly allege facts that would entitle her to the relief she seeks, and her Complaint should be dismissed in its entirety. Alternatively, the Complaint fails to provide a short and plain statement under Rule 8, and it should be dismissed in its entirety. Defendants request such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted, this the 25th day of September 2026.

**THE UNIVERSITY OF MISSISSIPPI, KIMBERLY M. DEVRIES, BRADLEY A. SALTERS, NOEL E. WILKIN, Ph.D., AND GLENN BOYCE, Ed.D.**

*/s/ Paul B. Watkins, Jr.*
PAUL B. WATKINS, JR. (MB No. 102348)
Attorney for Defendants

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
pwatkins@mayomallette.com