**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

RECEIVED
OCT 08 2026
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

NATALIA J. NORWOOD

PLAINTIFF

v.

THE UNIVERSITY OF MISSISSIPPI; KIMBERLY M. DEVRIES, individually and in her official capacity; BRADLEY A. SALTERS; NOEL E. WILKIN, Ph.D.; and GLENN BOYCE, Ed.D., each in his official capacity

DEFENDANTS

CIVIL ACTION NO. 3:26-cv-00213-JDM-RP

**PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF HER RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DOC. 11]**

## INTRODUCTION

Defendants' motion asks the Court to read the complaint the way Defendants wish it had been written. It calls the November 2025 OCR complaint a national-origin complaint when the pleading says race, color, sex, disability, and retaliation. It recites the reasonable-worker standard for retaliation and then demands a change to "terms and conditions." It says Norwood never alleged that remote work fell short, while Original Complaint ¶ 122 says exactly that. And it cites *Strife v. Aldine Independent School District* for the proposition that an employer may move at its own pace, without mentioning that *Strife* reversed the dismissal of a delayed-accommodation claim on facts that track this one.

Norwood has now filed a First Amended Complaint ("FAC") as a matter of course. Doc. 11 attacks a superseded pleading, and the Court should deny it as moot without prejudice to a renewed motion directed at the FAC. If the Court instead applies the motion to the FAC, it fails on its own terms for the reasons below.

## I. THE FAC MOOTS DOC. 11; ALTERNATIVELY, THE MOTION FAILS AS APPLIED TO THE FAC

This memorandum uses "OC" for the July 27, 2026 Original Complaint [Doc. 1], "FAC" for the First Amended Complaint filed concurrently under Rule 15(a)(1)(B), and "Doc. 12" for Defendants' memorandum. Defendants served Doc. 11 on September 25, 2026, so the FAC is timely as of right. The FAC materially revises and clarifies the pleading Defendants challenged: it adds an exhaustion chronology (FAC ¶¶ 12–27), replaces OC Count IV with a student-advocacy theory (FAC ¶¶ 110–115, 173–180), and maps every count to identified paragraphs.

An amended complaint does not automatically moot a pending motion. When "some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir. 2018). That is a matter of discretion, and discretion favors a clean slate here. Defendants' arguments are keyed to OC paragraph numbers, to a Count IV that no longer exists, and to an exhaustion record the FAC now pleads in detail. Requiring Norwood to defend the old pleading while the new one governs would waste the Court's time and Defendants' as well.

The stay order does not change the analysis. Magistrate Judge Percy stayed proceedings "pursuant [to] Local Uniform Civil Rule 16(b)(3)(B)" pending a ruling on Defendants' motion. Doc. 13. That rule addresses immunity-based stays. It does not bar an amendment as of right under Rule 15(a)(1)(B), and Norwood does not ask the Court to lift the stay or open discovery.

The FAC replaces OC Count IV with a student-advocacy theory; Norwood does not ask the Court to adjudicate OC Count IV in its original form.

## II. EXHAUSTION AND TIMELINESS ARE AFFIRMATIVE DEFENSES THAT MUST APPEAR ON THE FACE OF THE COMPLAINT

The Court accepts well-pleaded facts as true and draws reasonable inferences in Norwood's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A Title VII plaintiff need not plead a prima facie case. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019).

Title VII's charge-filing requirement is not jurisdictional. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548–51 (2019). Failure to exhaust is therefore an affirmative defense on which Defendants bear the burden. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018), *aff'd*, 587 U.S. 541 (2019). Dismissal on a limitations-type defense is proper only when the defense is evident from the pleadings. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). Defendants' exhaustion and timeliness arguments do not clear that bar, because the FAC affirmatively pleads two earlier receipt dates that Defendants never address.

## III. THE SUMMARY OF FINDINGS CANNOT DISPLACE PLEADED FACTS

Defendants rely on UM's October 23, 2025 Summary of Findings ("SOF"). Doc. 12 at 3 n.2. The Court may consider what UM recorded and decided. It may not accept UM's disputed version of events as true over Norwood's contrary allegations. *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440–41 (5th Cir. 2015); *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 n.9 (5th Cir. 2018). The same rule applied when an employer tried to win dismissal with its own EEOC position statement. *Haskett v. T.S. Dudley Land Co.*, 648 F. App'x 492, 496–97 (5th Cir. 2016).

Two examples show why this matters. First, the SOF records interim remote work and a transfer decision deferred pending the investigation. Norwood alleges that she told Salters on

April 14, 2025 that remote work was not an effective resolution, and that UM tied any further accommodation to the investigation on April 17. OC ¶¶ 122–125. UM's conclusion cannot decide whether that deferral was reasonable. Second, the SOF credits Benson's statement that he "observed no inappropriate behavior from Ms. DeVries." Norwood alleges a recording in which Benson describes telling DeVries that Norwood was being treated unfairly relative to her comparators. OC ¶ 150; FAC ¶ 128. Benson's recorded statement supports Norwood's challenge to the Summary's characterization; the Summary does not conclusively resolve the disputed treatment alleged.

## IV. THE TITLE VII CLAIMS (COUNTS I–III) ARE TIMELY AND PLAUSIBLE

### A. Defendants misdescribe the OCR complaint, and the earlier receipt dates control.

Defendants say the November 8, 2025 OCR complaint alleged "national origin discrimination." Doc. 12 at 3. The pleading says otherwise. OC ¶ 26 alleges an OCR complaint based on race or color, sex, disability, and retaliation, and OCR's April 29, 2026 referral letter directs EEOC to use OCR's receipt date. OC ¶¶ 26–31; Doc. 1-1, Ex. C. An employment complaint referred under 29 C.F.R. § 1691.6(a) is deemed a charge received by EEOC on the date the referring agency received it. The national-origin label on the later EEOC form for Charge No. 490-2026-02296 does not shrink the earlier submission. *Id.*, Ex. D; FAC ¶¶ 19–21.

The FAC also pleads that Norwood's November 27, 2025 written EEOC submission, assigned Inquiry No. 490-2026-00516, identified the parties, described the challenged practices, and requested EEOC action, and that her April 23, 2026 verification relates back to it. FAC ¶¶ 14–17. Verification may relate back to a qualifying earlier writing. 29 C.F.R. § 1601.12(b); *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753–56 (5th Cir. 2020). *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337–39 (5th Cir. 2021), is not to the contrary: the plaintiff there relied on an intake questionnaire that was never verified, and the employer received no notice of the added

allegations during the agency investigation. Norwood verified, and the FAC pleads what the earlier writing contained.

The correct charging period is 180 days. OC ¶ 194's reference to 300 days is corrected in the FAC. The arithmetic still favors Norwood:

- April 23, 2026 verification standing alone: lookback to October 25, 2025.
- November 27, 2025 EEOC submission: lookback to May 31, 2025.
- November 8, 2025 OCR receipt: lookback to May 12, 2025.

Defendants concede that the October 22, 2025 restrictions fall only "three days outside" the shortest window. Doc. 12 at 6. Under either earlier receipt date, those restrictions and the October 23 SOF fall comfortably inside it. Whether the earlier writings qualify is a fact question the pleadings do not resolve against Norwood. *EPCO*, 467 F.3d at 470.

**B. Count I: Defendants recite the right standard and then apply the wrong one.**

Defendants correctly cite *Burlington Northern*'s reasonable-worker standard. Doc. 12 at 5. One page later they argue that the records denial had no "impact on the terms and conditions of her employment." *Id.* at 6. *Burlington Northern* rejected precisely that limitation: retaliation reaches any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," whether or not it touches employment terms. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006).

On page 5, Defendants assert that Norwood has not alleged that her "pay or benefits have been altered." On page 13, they address her allegation that she "lost income as an adjunct instructor." Compare Doc. 12 at 5, with *id.* at 13. That discussion does not establish the loss; continued staff salary does not resolve the separately alleged adjunct harm. OC ¶¶ 144–145; FAC ¶¶ 118–125.

*Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009), does not help Defendants. *Stewart* addressed a short paid leave, followed by reinstatement, without the identified adverse effects. Norwood does not challenge the paid protective leave she requested. She challenges what UM added to it: campus exclusion, deactivation of email and instructional systems, a payroll-portal lockout from October 23, 2025 through June 17, 2026, and the resulting interference with separate compensated teaching and with her ability to pursue her own complaint. FAC ¶¶ 116–125, 194. Requested protection is not consent to everything UM chose to attach to it.

Causation is pleaded by sequence and knowledge. Norwood's September 10, 2025 formal complaint preceded the October 21 consultation and October 22 restrictions. FAC ¶¶ 116–120, 154. On January 23, 2026, she copied Wilkin on her OCR notice; the appeal denials dated January 23 were transmitted to her on January 24. FAC ¶¶ 134, 151. Ultimate liability requires but-for causation, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013), but that is a proof standard, not a pleading bar.

The records theory is not a freestanding public-records claim. Norwood alleges that UM used evidence-access restrictions to impede her discrimination proceedings. Defendants say the records denial "is not tied to her employment." Doc. 12 at 13. UM withheld the investigative file under the personnel-record exemption. FAC ¶ 130. That classification does not establish retaliation; the alleged obstruction of Norwood's complaint participation supplies the asserted connection.

Finally, Count I challenges Salters's June 22, 2026 refusal to make a present staff-return determination. Norwood requested a written reassessment and return plan on May 6, 2026. On May 22, she sent a preservation demand to University counsel, copying Salters and Wilkin; the

attachment identified her EEOC charges. On June 19, she renewed her request and objected directly to Salters. Salters responded on June 22. FAC ¶¶ 140–143, 149, 152. On information and belief, Salters knew of the charges before he responded. *Id.* ¶ 149. Retaliation that grows out of an earlier charge properly before the Court need not be separately exhausted. *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981); FAC ¶¶ 26, 152.

**C. Count II alleges a concrete harm and a race- and sex-based context.**

A discrimination plaintiff must show "some harm" to an identifiable term or condition of employment, not a significant one. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). Count II challenges UM's August 2025 decision not to restore Norwood's substantive investigative responsibility for Complainant C's matter after she expressly offered to resume it. FAC ¶¶ 102–109, 157–164. Loss of substantive duties, experience, and credit is harm to the terms of employment under *Muldrow*, regardless of continued base pay.

The inference of discrimination is pleaded, not assumed. DeVries told Norwood she had been selected for a sensitive matter because she was "a woman of color too." FAC ¶¶ 32, 161, 203. DeVries required a White male investigator to accompany Norwood when she interviewed a White male respondent. FAC ¶ 64; OC ¶ 79. White cohort members received policy work, interim roles, and stipends that Norwood did not. FAC ¶¶ 28–39. At the pleading stage, that is enough. *Cicalese*, 924 F.3d at 767–68.

**D. Count III pleads harassment content and a timely contributing act.**

Defendants rely on *Ayorinde v. Team Indus. Servs., Inc.*, 121 F.4th 500, 509 & n.3 (5th Cir. 2024). The charges in *Ayorinde* described discrete employment decisions without any harassment facts. Norwood's November 27 writing reported sexual harassment by a male supervisor, ineffective protection, retained supervision, and isolation, and her April 23 intake and

written supplementation supplied the harassment history before EEOC closed the charge. FAC ¶¶ 14–18. That is the content *Ayorinde* found missing.

Defendants also say no unwanted conduct followed May 2024. Doc. 12 at 9. They overlook DeVries's February 14, 2025 joke to Benson about Norwood reporting him for sexual harassment, made after Norwood had reported Benson's harassment to DeVries, and Benson's February 18, 2025 grab of Norwood's buttocks. OC ¶ 68; FAC ¶¶ 55–56.

A hostile-environment claim is timely if one contributing act falls within the charging period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The FAC identifies one: on June 2–4, 2025, DeVries directed that Norwood's completed Registrar reports remain on hold, without acknowledging her own review delay, while Norwood remained the proposed contact to explain the delay to a Black complainant. FAC ¶¶ 68–77, 169. Norwood objected on June 5. FAC ¶¶ 77, 169. June 2–4 falls inside both earlier 180-day periods. FAC ¶ 170.

## V. COUNT IV IS A STUDENT-ADVOCACY CLAIM THAT TITLE VII CANNOT REACH

*Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995), bars employees from using Title IX to duplicate Title VII remedies for their own employment discrimination. *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247–49 (5th Cir. 1997), recognizes an employee's Title IX retaliation claim for opposing noncompliance that Title VII does not cover. *See also Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1118–19 (5th Cir. 2021). An educator who reports sex discrimination against students is protected. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74, 179–80 (2005).

The FAC pleads that claim. On February 26, 2025, Norwood helped Student A, who reported a sexual rumor and a sexually derogatory classroom discussion; Norwood contacted UMatter and discussed a possible Title IX report. When Norwood told DeVries about it, DeVries

immediately warned that if Norwood's adjunct teaching created conflicts, they might need to rethink her teaching arrangement. FAC ¶¶ 110–115, 173–180. The protected activity concerns a student's access to education, not Norwood's own employment grievance. Title VII offers Norwood no remedy for retaliation against student advocacy, so *Lakoski* does not apply.

## VI. COUNT V: *STRIFE* SUPPORTS NORWOOD, NOT DEFENDANTS

Section 504 employment claims apply ADA standards. 29 U.S.C. § 794(d); *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 245 n.2 (5th Cir. 2025).

### A. The allegation Defendants say is missing appears in OC ¶ 122.

Defendants assert that Norwood never alleged that her interim accommodation was inadequate. Doc. 12 at 11–12. OC ¶ 122 alleges that on April 14, 2025, Norwood told Salters that remote work was "not a complete or effective resolution," describing anxiety, medication, near-fainting, and the effects of DeVries's communications. OC ¶ 123 alleges that on April 17 UM relied on an adjusted reporting structure and deferred further accommodation until the investigation concluded. OC ¶¶ 122–125. The FAC pleads the same facts. FAC ¶¶ 84–101, 182–189.

### B. Defendants quote *Strife* selectively.

Defendants cite *Strife* for the proposition that an employer "is entitled to move at whatever pace he chooses" so long as the employee's performance problem is not "truly imminent." Doc. 12 at 12 (quoting *Strife*, 138 F.4th at 246). The same page explains why that principle did not save the employer: when the employee keeps working in a role that needs accommodation, an employer that drags its feet can force her "to work under suboptimal conditions." *Strife*, 138 F.4th at 246 (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 737 n.6 (5th Cir. 1999)). The Fifth Circuit then reversed the dismissal of the failure-to-accommodate claim. *Id.* at 246–48.

*Strife* is this case in its essentials:

- Known, documented need. Strife's physicians documented her condition and need. Norwood supplied medical certifications and HR-approved work-from-home documentation, renewed through October 16, 2025. FAC ¶¶ 85, 100, 184.
- An unrelated precondition. The school district insisted on an independent medical examination it did not need. UM conditioned further accommodation and staff-return planning on the completion of a separate discrimination investigation that had nothing to do with Norwood's functional limitations. FAC ¶¶ 92, 143, 186–187.
- The "she kept working" defense. The district argued that Strife continued working without injury. The district court in *Strife* dismissed because she "did not experience any changes in the terms and conditions of her employment." The Fifth Circuit called that "a different, and incorrect, approach" and held that a failure-to-accommodate claim does not require "proof of an adverse employment action." *Id.* at 246–48. Defendants make the same rejected argument here, pointing to continued salary. Doc. 12 at 5.
- Length of delay. Strife waited six months. Norwood first told UM that remote work was ineffective on April 14, 2025; UM had still not made a staff-return determination when Salters responded on June 22, 2026. FAC ¶¶ 91, 143.
- Movement only under pressure. The district granted the request after Strife took legal action. UM restored Norwood's email and teaching access on July 2, 2026, only after agency proceedings, a preservation demand, and her June 19 objection. FAC ¶¶ 141–144, 194.

Defendants also cite *Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243, 247 (5th Cir. 2016), for the proposition that delay is not a separate claim. Norwood does not assert one. Her claim is that UM failed to provide an effective accommodation, and the delay is part of how it failed. That is the claim *Strife* allowed to proceed.

**C. Intent for compensatory damages is pleaded.**

Compensatory damages require intentional discrimination. *Smith v. Harris Cnty.*, 956 F.3d 311, 318 (5th Cir. 2020). The FAC pleads that UM knew of Norwood's documented limitations, was told the interim measure was ineffective, and chose to condition further accommodation on an unrelated investigation for more than a year. FAC ¶¶ 91–92, 100, 186–187. Knowing refusal to act on a documented need supports an inference of intent at this stage.

## VII. COUNT VI: THE RETALIATION CLAIM STANDS ON ITS OWN

Defendants argue that Count VI fails "for largely the same reasons" as Count I. Doc. 12 at 13. It survives for the same reasons. Norwood requested accommodation, opposed disability discrimination, and pursued a disability-related appeal; UM imposed and maintained restrictions that went beyond the protection she requested, interfered with her separate teaching, and conditioned her return on an unrelated investigation. FAC ¶¶ 191–200. The Rehabilitation Act retaliation standard tracks Title VII's, Doc. 12 at 13, so the *Burlington Northern* analysis in Section IV.B applies here as well.

## VIII. COUNT VII: DEVRIES IS NOT ENTITLED TO QUALIFIED IMMUNITY AT THE PLEADING STAGE

**A. The FAC pleads DeVries's own conduct.**

Count VII rests on DeVries's own decisions, not on her title. DeVries:

- told Norwood she was selected for a sensitive matter because she was "a woman of color too" (FAC ¶ 203);

- allocated policy work, interim roles, and stipends to White cohort members (FAC ¶¶ 28–39, 204–207);
- required White male colleagues to accompany Norwood when she interviewed a White male respondent (FAC ¶¶ 64, 208);
- responded to Norwood's May 2024 report of Benson's sexual harassment by invoking Benson's family and White coworkers' interests, telling Norwood not to tell the Title IX Coordinator, and leaving Benson in her chain of supervision (FAC ¶¶ 45–50, 211–215); and
- joked to Benson on February 14, 2025 about Norwood reporting him for sexual harassment, four days before Benson grabbed Norwood's buttocks (FAC ¶¶ 55–56, 214, 219).

**B. The law was clearly established.**

Intentional race and sex discrimination in public employment violates the Equal Protection Clause. *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550–51 (5th Cir. 1997). Racial allocation of public-employment assignments has been unconstitutional in this circuit since at least *Baker v. City of St. Petersburg*, 400 F.2d 294, 300–01 (5th Cir. 1968). A supervisor is liable for a hostile environment created by subordinates "if that official, by action or inaction, demonstrates a deliberate indifference to a plaintiff's constitutional rights." *Southard*, 114 F.3d at 551.

Defendants cite *Johnson v. Halstead*, 916 F.3d 410, 418 (5th Cir. 2019), for the deliberate-indifference standard. Doc. 12 at 15. They omit the result. *Johnson* affirmed the denial of qualified immunity at the pleading stage to a police chief who received reports of racial harassment and did not stop it. 916 F.3d at 416–18. DeVries received a detailed report of repeated sexual conduct, promised a reporting change, did not implement it, discouraged a

formal report, and then mocked the report in front of the harasser. That is the deliberate indifference *Johnson* describes.

### C. Alternative Request for Further Particularity

If further factual particularity is required, Norwood requests an opportunity to provide it, including through a tailored Rule 7(a) reply if ordered under *Schultea*. *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc).

## IX. COUNT VIII IS UNCHALLENGED

Defendants make no argument directed at Count VIII. Count VIII seeks only prospective relief under Section 504 against officials with authority over the continuing violation, through *Ex parte Young*. FAC ¶¶ 224–233. Last month, in a case against this same University, the Fifth Circuit held that *Ex parte Young* permitted federal official-capacity claims for prospective relief against the University officials connected to the challenged decision. *Eriakha v. Univ. of Miss.*, No. 26-60007 (5th Cir. Sept. 9, 2026). Count VIII is built the same way: it names only officials with an alleged connection to the continuing violation. FAC ¶¶ 226–229. Defendants have offered no ground for dismissing it.

## X. RULE 8 DOES NOT SUPPORT DISMISSAL

*Gordon v. Green* concerned pleadings totaling "over 4,000 pages, occupying 18 volumes, and requiring a hand truck or cart to move." 602 F.2d 743, 745 (5th Cir. 1979). The Fifth Circuit directed dismissal with leave to amend. *Id.* at 746–47. Defendants identify the Original Complaint as sixty-two pages and 243 paragraphs. Doc. 12 at 19. Their other authority, *McZeal v. J.P. Morgan Chase Bank, NA*, No. 13-6754, 2014 U.S. Dist. LEXIS 92529, at *20–24 (E.D. La. July 7, 2014), addressed "incomprehensible and disjointed claims." Doc. 12 at 19. Neither comparison substitutes for examining this FAC's organization and factual clarity.

Defendants' count-by-count analysis and citations to challenged paragraphs support fair notice, though they do not foreclose every Rule 8 objection. Doc. 12 at 4–18. Defendants also invoke "the Court's admonition to comply with Rule 8" without citing such an order. *Id.* at 19.

The FAC identifies each claim and defendant, incorporates specific supporting paragraphs, and states the theory at the beginning of each count. FAC ¶¶ 147, 157, 165, 173, 181, 191, 201, 224. That structure supplies a concrete basis for responding to the allegations.

## CONCLUSION

The Court should deny Defendants' Motion to Dismiss [Doc. 11] as moot in light of the First Amended Complaint, without prejudice to Defendants' right to file a motion directed at that pleading. Alternatively, the Court should deny the motion on the merits. If the Court grants any part of the motion, Norwood asks that it identify the specific claim and defect, and that any dismissal for a curable pleading defect or for lack of jurisdiction be without prejudice. *See Eriakha*, No. 26-60007 (jurisdictional dismissals "must be without prejudice").

Respectfully submitted, this the 8th day of October, 2026.

NATALIA J. NORWOOD
Plaintiff, pro se
9401 Crete Circle
Tuscaloosa, Alabama 35406
Telephone: (228) 280-9068
Fax: None
Email: nataliajnorwood.legal@gmail.com

Pro se Plaintiff. Plaintiff will promptly notify the Clerk of Court in writing of any change of address. L.U. Civ. R. 11(a).

**NOTICE REGARDING SERVICE**

On October 8, 2026, I am submitting the foregoing Memorandum Brief in Support of Plaintiff's Response in Opposition to Defendants' Motion to Dismiss to the Clerk by hand delivery, with an additional copy for counsel for all Defendants. I request Court-arranged service and that its method and date be recorded on the docket. This notice does not certify completed service. Counsel is:

Paul B. Watkins, Jr. (MB No. 102348)
Mayo Mallette PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
pwatkins@mayomallette.com

NATALIA J. NORWOOD
Plaintiff, pro se